| | | |
|---|---|---|
| **DARRE FINNEY AND GLENDA MARIE SMITH** | * | NO. 2025-CA-0423 |
| | * | |
| **VERSUS** | | COURT OF APPEAL |
| | * | |
| **THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, M/V CMA CGM BIANCA AND TEUCARRIER NO. 3 CORP.** | *<br><br>* * * * * * * | FOURTH CIRCUIT<br><br>STATE OF LOUISIANA |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-04424, DIVISION "J"
Honorable D. Nicole Sheppard
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Judge Rosemary M. Ledet, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Pete Lewis
Barrett R. Stephens
LEWIS & CAPLAN, APLC
111 Veterans Memorial Blvd., Suite 160
Metairie, LA 70005


COUNSEL FOR PLAINTIFFS/APPELLEES


Jason Paul Waguespack
Samuel L. Fuller
Cody W. Castle
GALLOWAY, JOHNSON, TOMPKINS & BURR
701 Poydras Street, 40th Floor
New Orleans, LA 70139


COUNSEL FOR DEFENDANT/APPELLEE

Scott Allen Soule
Josephine H. Azuma
BLUE WILLIAMS, LLC
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002


COUNSEL FOR DEFENDANT/APPELLANT


**VACATED AND REMANDED**
**JANUARY 7, 2026**

This is a suit for damages. The Appellant, the Board of Commissioners of the Port of New Orleans, ("PORT") appeals the August 15, 2024 and November 15, 2024 judgments of the trial court that found in favor of Appellees, Darre Finney and Glenda Marie Smith, and against the PORT and Defendant-Appellee, Teucarrier 3 Corporation ("Teucarrier").[1] For the following reasons, we vacate and remand to the trial court for proceedings consistent with this opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 2, 2020, Appellee, Darre Finney, a gantry crane operator, sustained injuries while loading a vessel, the M/V CMA CGB BIANCA, ("BIANCA") at the Nashville Avenue Terminal at the Port of New Orleans. Mr. Finney's crane sat approximately ninety (90) feet in the air; as he loaded cargo unto the BIANCA, a volatile storm quickly arose causing blinding rain and intense winds. During this wind-event, Mr. Finney continued loading containers onto the BIANCA until strong winds pushed his crane down river and slammed him around inside the cab of the crane. It's the PORT's contention however, that the BIANCA

---

[1] Prior to trial, Appellees and Teucarrier entered into a "Mary Carter" agreement, in which Appellees claims against Teucarrier were resolved. These parties then aligned interests in prosecuting the remaining claims against the PORT. Teucarrier, although an original Defendant in the trial court, is the Defendant-Appellee in this appeal.

1

dragged his crane when it came loose from its moorings. As a result of this event, Mr. Finney sustained injuries to his right shoulder and his lumbar spine. Mr. Finney endured several surgeries to his right rotator cuff and a lumbar fusion surgery at the L3-4 level.

In May of the following year, Appellees filed a petition for damages alleging negligence against the PORT, the BIANCA, and Teucarrier, the registered owner of the BIANCA. Appellee Finney argued that he was injured because the PORT allowed unreasonable and dangerous conditions to exist on the gantry crane he operated during the storm. He also alleged that Teucarrier failed to exercise reasonable care as the BIANCA collided with the PORT's dock and his gantry crane also contributing to his injuries. In October 2023, Teucarrier filed a motion for summary judgment arguing there was no basis of liability between it and Appellee Finney pursuant to §905 of the Longshore and Harbor Worker's Compensation Act.[2] Teucarrier also alleged that it did not breach any *Scindia*[3]

---

[2] 33 U.S.C.A. § 905(b), **Negligence of vessel,** provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

[3] The United States Fifth Circuit summarized the duties shipowners owe to longshoreman, termed *Scindia* duties: 1) the turnover duty; 2) the active control duty; and 3) the duty to

duties owed to Appellee Finney. In opposition, Appellee argued that genuine issues of material fact existed as to whether Teucarrier breached its duties that precluded summary judgment. The trial court denied Teucarrier's motion for summary judgment in November 2023.

Trial commenced in this matter in early December 2023 lasting approximately four days. In August 2024, the trial court rendered judgment for the Appellees and against the PORT and Teucarrier in the amount of ($3,142,111.08). Shortly thereafter, the PORT filed a motion to amend post-trial deadlines arguing that it had not been served with the August 15, 2024 judgment or Notice of Signing of Judgment pursuant to La. C.C.P art. 1913.[4] The trial court denied the PORT's motion on August 26, 2024 stating that the motion must be set for contradictory hearing. Subsequently, the PORT filed a motion for new trial, arguing that the trial court failed to address Appellee Smith's loss of consortium claim in the judgment,

---

intervene. *Hill v. Texaco.*, 674 F.2d 447, 451 (5th Cir. 1982 citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S. Ct. 1614, 68 L. Ed.2d 1 (1981)).

[4] La. C.C.P. art. 1913 provides:

> A. Except as otherwise provided by law, notice of the signing of a final judgment is required in all contested cases and shall be mailed or delivered in open court by the clerk of court to the counsel of record for each party, and to each party not represented by counsel. Delivery of the signed judgment in open court shall constitute notice of judgment and shall be documented in the record of the proceeding.
> B. Notice of the signing of a default judgment against a defendant on whom citation was not served personally, or on whom citation was served through the secretary of state, and who filed no exception, answer, or other pleading, shall be served on the defendant by the sheriff, by either personal or domiciliary service, or in the case of a defendant originally served through the secretary of state, by service on the secretary of state.
> C. Except when service is required in accordance with Paragraph B of this Article, notice of the signing of a default judgment shall be mailed by the clerk of court to the defendant at the address where personal service was obtained or to the last known address of the defendant.
> D. The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed or delivered in open court.

and the judgment appeared contrary to the law and evidence. The hearing on the PORT's motion for new trial was set for March 27, 2025 and the court denied it on April 9, 2025 after the second judgment had been issued. [5]

In early October 2024, counsel for Appellees submitted a second judgment to the trial court regarding the trial held the previous year. The judgment reads, in pertinent part, as follows:

> **IT IS ORDERED, ADJUDGED, and DECREED** that Judgment is hereby rendered in favor of Plaintiffs, Darre Finney and Glenda Marie Smith, and against Defendants, The Board of Commissioners for the Port of New Orleans and Teucarrier No. 3 Corporation, finding said Defendants at fault and liable for the August 2, 2020, incident made the subject of this lawsuit. The Court apportions fault to Defendants for causing the August 2, 2020 incident as follows:
>
> **The Board of Commissioners for the Port of New Orleans: 65%**
> **Teucarrier No. 3 Corporation:                                        35%**
> _____
> **TOTAL:                                                                        100%**
>
> **IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Judgement [sic] is rendered in favor of Plaintiff, Darre Finney, and against Defendants, The Board of Commissioners of The Port of New Orleans and Teucarrier No. 3 Corporation, finding that Darre Finney proximately suffered injuries and damages as a result of the negligence of Defendants, The Board of Commissioners of The Port of New Orleans and Teucarrier No. 3 Corporation. Accordingly, the court hereby orders that Defendants, The Board of Commissioners of The Port of New Orleans and Teucarrier No. 3 Corporation, pay damages to Plaintiff, Darre Finney, as follows:

**Past Medicals:**                                                                          $   129,241.08
**Future Medicals:**                                                                       $ 559[.]448.00
**Past Lost Wages:**                                                                       $   613,871.00
**Past Fringe Benefits:**                                                                  $   132,331.00
**Future Lost Wages/Loss of Earning Capacity**                             $   825,923.00
**Future Finge[sic] Benefits:**                                                         $   176,747.00
**Past and Future Physical Pain and Suffering-Right Shoulder:** $   250,000.00
**Past and Future Physical Pain and Suffering-Back Injury:**       $   350,000.00

_____

[5] For the purpose of the instant appeal, we deem the PORT's motion for new trial timely. Pursuant to La. C.C.P. art. 1974, "A party may file a motion for a new trial not later than seven days, exclusive of legal holidays, after the clerk has mailed or delivered in open court, or the sheriff has served, the notice of judgment as required by Article 1913." On August 22, 2024, counsel for Appellee emailed a copy of the judgment and Notice of Signing of Judgment to the PORT. The PORT filed its motion for new trial on August 29, 2024.

**Past and Future Emotion Pain and Suffering-PTSD**: $ 50,000.00

---

**TOTAL:** $ 3,087,561.08


**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Judgement [sic] is rendered in favor of Plaintiff, Glenda Marie Smith, and against Defendants, The Board of Commissioner of The Port of New Orleans and Teucarrier No. 3 Corporation, finding that Glenda Marie Smith proximately suffered loss of consortium damages as a result of the negligence of Defendants, The Board of Commissioners of The Port of New Orleans and Teucarrier No. 3 Corporation. Accordingly, the Court hereby orders that Defendants, The Board of Commissioners of The Port of New Orleans and Teucarrier No. 3 Corporation, pay damages to Plaintiff, Glenda Marie Smith, as follows:

**Loss of Consortium:** $100,000.00

---

**TOTAL:** $100,000.00

The trial court signed this second judgment on November 15, 2024. The instant appeal followed after the trial court issued its judgment on the PORT's motion for new trial on April 9, 2025.


## DISCUSSION

On appeal, the PORT assigns ten assignments of error. However, we pretermit discussion of those assignments of error at this time and instead address several procedural errors in the trial court's judgments.

### November 15, 2024 judgment (second judgment)

The second judgment signed by the trial court contains a loss of consortium damage award for ($100,000.00) for Appellee Smith that is not contained in the original judgment. The second judgment also awards damages separately to the Appellees, in contrast to the original judgment, which awards the total amount of damages to the parties jointly, or *in solido*. In its brief to this court, the PORT

5

notes that it is taking this appeal from both judgments; however, the record does not reflect the trial court's posture with respect to these two judgments. While the PORT deems the second judgment "a corrective judgment," the record is devoid of evidence of the trial court's intent in signing the second judgment.[6] La. C.C.P. art. 1951 applies to final judgments and states:

> On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment or to correct deficiencies in the decretal language or errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received. **A final judgment may not be amended under this Article to change its substance.**

(Emphasis added).

While the statute permits the trial court to amend a final judgment at any time, it "may change the substance of the original judgment in three ways: 1) the timely motion for new trial; 2) timely appeal; or 3) petition or action for nullity." *Mercato v. Elisio, L.L.C. v. City of New Orleans*, 22-0228, p. 7 (La. App. 4 Cir. 12/21/22), 356 So.3d 505, 510 (quoting *Safeguard Storage Properties, L.L.C. v. Donahue Favret Contractors, Inc.*, 10-0673, p. 9 (La. App. 4 Cir. 3/31/11), 60 So.3d 110, 117 (internal quotations omitted). This Court discussed in detail the trial court's authority to amend a final judgment pursuant to La. C.C.P. art. 1951 in *Bates v. City of New Orleans*, 13-1153 (La. App. 4 Cir. 3/26/14), 137 So.3d 774:

> • "Article 1951 contemplates the correction of a 'clerical error' in a final judgment, but does not authorize substantive amendments." An amendment that "adds to, subtracts from, or in any way affects the substance of a judgment, is considered a substantive amendment."

---

[6] There is no evidence in the record that the trial court vacated the original judgment. Also, the caption of the second judgment does not demonstrate that it is a "corrective" or amended judgment.

• The substance of a judgment can be altered only by a timely motion for new trial, nullity action, or appeal.

• "The trial judge cannot, on his own motion or on the motion of any party, change a judgment which has been so signed, notwithstanding it was signed in error."

• "La. C.C.P. art.1951 does not permit the trial court to substantively alter a final judgment even if the amendment merely expresses the trial judge's actual intention. The trial court's written judgment is controlling, even if the trial judge may have intended otherwise."[7]

• A trial court's authority on a motion to enforce a final judgment is limited to enforcing its judgment as written.

• Substantive amendments to judgments made without recourse to the proper procedures—a timely motion for a new trial or an appeal—are absolute nullities.

• The remedy generally granted by an appellate court when it finds an improper substantive amendment has been made to a final judgment is to set aside and annul the amending judgment and to reinstate the original judgment.

*Bates*, 13–1153, pp. 13-14, 137 So.3d at 784-85 (internal citations omitted); *see also Freeman v. Zara's Food Store, Inc.*, 16-0445, p. 13 (La. App. 4 Cir. 11/2/16), 204 So.3d 691, 699–70.

Applying these principles, we find that the trial court improperly made a substantive amendment to the original judgment upon signing the second judgment in November. The damage award for loss of consortium added an item of damages not present in the original judgment. The trial court also failed to follow the proper procedure to substantively amend the judgment when it denied the PORT's motion

---

[7] We note that in the partial transcript of the July 1, 2024 hearing, the trial judge rendered judgment on the record in favor of Appellees and against the PORT and Teucarrier. The trial judge made no findings of fact and did not give oral reasons for the judgment. The trial judge specified separate damage awards for the Appellees for a total award of $3,142,111.08. The trial judge did not make an assignment of liability at that time but stated that the judgment was against both defendants. The trial judge also stated that the judgment would be signed on the same day. It is unclear from the record why the judgment signed on August 15, 2024 does not reflect the trial judge's original intent.

for new trial and did not consider that motion until after the second judgment had been issued.[8] Thus, pursuant to the statutory law and the above-cited jurisprudence, the second judgment is an absolute nullity.

**August 15, 2024 judgment (original judgment)**

The original judgment reads, in pertinent part, as follows:

> **IT IS ORDERED, ADJUDGED AND DECREED** that Judgment is hereby rendered in favor of favor of Plaintiffs, Darre Finney and Glenda Marie Smith, and against defendants The Board of Commissioners of the Port of New Orleans (65%) and Teucarrier No. 3 Corporation (35%) in the amount of three million, one hundred forty-two thousand, one hundred eleven and 08/100 dollars ($3,142,111.08) plus judicial interest from the date of judicial demand and with all recoverable costs being assessed and taxed against Defendants herein.

After review of the trial court's original judgment, we also find it deficient as it does not comply with La. C.C.P. arts. 1917(B) and 1812(C). La. C.C.P. art. 1917(B) concerns bench trials in personal injury cases and provides as follows:

> B. In nonjury cases to recover damages for injury, death, or loss, whether or not requested to do so by a party, the court shall make specific findings that shall include those matters to which reference is made in Paragraph C of Article 1812 of this Code. These findings need not include reasons for judgment.[9]

La. C.C.P. art. 1812(C) provides in pertinent part:

> C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
> (1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
> (a) Whether such fault was a legal cause of the damages, and, if so:
> (b) The degree of such fault, expressed in percentage
>
> …

---

[8] The trial court denied the PORT's motion for new trial on April 9, 2025.

[9] We note for the record that the PORT requested written reasons for judgment after each judgment was issued. The appellate record does not contain any written reasons from the trial court. Failure to provide written reasons pursuant to the request is a violation of La. C.C. P. art 1917(A).

8

(4)The total amount of special damages and the total amount of general damages sustained as a result of the injury, death or loss, expressed in dollars, and, if appropriate the total amount of exemplary damages to be awarded.

Thus, the above-cited articles mandate that after a bench trial, a trial court shall make these specific findings of fact, whether or not either party requests them. *See Laboriel-Pitio v. Latiker*, 20-0669, p. 13 (La. App. 4 Cir. 6/16/21), 323 So.3d 929, 937. While the original judgment finds against the PORT and Teucarrier and assigns percentages to them, sixty-five percent (65%) and thirty-five percent (35%) respectively, the original judgment is silent as to liability. The judgment also fails to find that the PORT and Teucarrier were negligent or at fault, or that the fault was the legal cause of Appellees' damages. While the original judgment awards a specific amount to the Appellee Finney and Appellee Smith, it does not designate the award as either general damages or special damages. Based on these deficiencies, the original judgment also must be vacated. Pursuant to La. C.C.P. art. 2164,[10] we exercise our discretion and vacate the trial court's original judgment. Further, we remand this matter to the trial court to issue a judgment consistent with La. C.C.P. arts. 1917 and 1812. *See* La. C.C.P. art. 2161.[11] *See also*

---

[10] La. C.C.P. art. 2164 provides:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

[11] La. C.C.P. art. 2161 provides:

An appeal shall not be dismissed because the trial record is missing, incomplete or in error no matter who is responsible, and the court may remand the case either for retrial or for correction of the record. An appeal shall not be dismissed because of any other irregularity, error or defect unless it is imputable to the appellant. Except as provided in Article 2162, a motion to dismiss an appeal because of any irregularity, error, or defect which is imputable to the appellant

*Jones v. Quality Distrib., Inc.*, 21-0280, p. 2 (La. App. 4 Cir. 8/4/21), 325 So.3d 1097, 1098.

**DECREE**

For the foregoing reasons, the August 15, 2024 and November 15, 2024 judgments of the trial court are vacated. This matter is remanded to the trial court for proceedings consistent with this opinion.

**VACATED AND REMANDED**

---

must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later.

10